**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| SARA BROOKE BURNSIDE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:05-CV-570 |
| | § | |
| ANTHEM BLUE CROSS BLUE SHIELD, | § | |
| ELI LILLY & COMPANY, ELI LILLY & | § | |
| COMPANY HEALTH PLAN, and | § | |
| PATTI A. BLASINGAME, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants Eli Lilly & Company ("Lilly"), Eli Lilly & Company Health Plan ("Health Plan"), and Patti A. Blasingame's ("Blasingame") (collectively, "Defendants") Motion for Summary Judgment (#44). Defendants seek summary judgment on Plaintiff Sara Brooke Burnside's ("Burnside") claims arising out of a denial of benefits under the Health Plan, which is regulated by the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), as well as unrelated state law claims for defamation, slander, and tortious interference with prospective contracts. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted in part and that Plaintiff's state law claims should be remanded to state court.

I.     Background

Plaintiff Burnside was employed by Defendant Lilly from October 15, 2001, until September 22, 2004, as a sales representative under the supervision of Defendant Blasingame.

While employed at Lilly, Burnside participated in Lilly's self-funded employee Health Plan, a component of Lilly's Employee Welfare Plan ("Welfare Plan"), which is subject to the provisions of ERISA.  Lilly's Employee Benefits Committee ("EBC") is designated as the administrator and fiduciary of both the Welfare Plan and the Health Plan.  Former Defendant Anthem Blue Cross Blue Shield ("Anthem"), which has been dismissed from this action, has served as the Health Plan's third-party administrator since April 2003, pursuant to an Administrative Services Agreement between Lilly and Anthem.  Effective January 1, 2004, Lilly adopted Anthem's administrative guidelines and medical policies as those applicable to the Health Plan.  Accordingly, unless the EBC has made a specific exception, Anthem's guidelines and policies are those used to interpret and administer the Health Plan.  Pursuant to the terms of the Health Plan and the Administrative Services Agreement, Anthem makes the initial determination on all insurance claims.  If a claimant wishes to appeal Anthem's initial decision, she may file a "Level 1" appeal with Anthem.  Once Anthem makes a determination in the Level 1 appeal, the claimant may then file a "Level 2" appeal with the EBC, which  makes the final decision on the claim.  The EBC retains the right to resolve all claims under the Health Plan.

In March 2004, Burnside contacted Anthem to inquire about insurance coverage for an adjustable gastric banding procedure for obesity, also known as a Lap-Band® procedure. According to Plaintiff, Anthem's representative advised her that the procedure would be covered at least in part, but that she needed to establish that the procedure was medically necessary for it to be covered in full.  Burnside and her physician were subsequently provided a checklist of criteria for Burnside to satisfy to obtain coverage and a copy of the pertinent insurance policy provisions.  During the next month, Burnside visited several doctors and provided Anthem with

2

the documentation it requested to make a coverage determination under the Health Plan.  Plaintiff admits that no one from Anthem told her at any time that she had satisfied the criteria for coverage.

On April 26, 2004, Anthem sent a letter to Burnside informing her that, based on a review of information regarding her policy, it had determined that Burnside's plan did not cover the Lap-Band surgery.  Specifically, the procedure was considered investigational under the policy and, therefore, was not covered.  On June 1, 2004, Anthem mailed another letter to Burnside, apparently in response to a request for reconsideration of the prior decision, which also stated that the procedure was not covered under the policy.

On June 15, 2004, Plaintiff filed a Level 1 appeal with Anthem.  In her letter of appeal, Burnside raised two complaints.  First, she alleged that Anthem was negligent in representing to her that coverage would be available, provided that she met the applicable criteria, when she was later informed that the Lap-Band procedure would not be covered under any circumstances.  Second, Burnside argued that the policy should cover the Lap-Band procedure because it had been approved by the FDA, it was a safer procedure than gastric bypass surgery, and it had been deemed medically necessary for her by her health care providers.  On July 7, 2004, Anthem sent Burnside a letter denying her Level 1 appeal on the grounds that the procedure was considered investigational and was not covered under the terms of the policy.

In July 2004, Burnside decided to undergo Lap-Band surgery, which was successfully performed on August 2, 2004.  Although Plaintiff's claim had not been approved by Anthem and she had not yet completed the appeals process, Burnside explained at deposition that her physical and mental health had deteriorated to such an extent that she felt compelled to have the surgery

3

at that time.  She admitted, however, that her treating physicians had not indicated that immediate surgery was necessary, only that surgery was medically necessary for her and that she was a good candidate for the procedure.  Burnside paid for the operation with her own funds and did not notify Anthem of her decision prior to the surgery.

On August 31, 2004, Plaintiff filed a Level 2 appeal with Anthem, which was then forwarded to the EBC.  Burnside again argued that Lap-Band surgery was not an investigational procedure and that it was medically necessary for her.  She further contended that the denial of coverage contradicted Anthem's initial representations to her that the procedure would be approved if she submitted appropriate medical documentation.  Finally, Burnside claimed that her Level 1 appeal was not actually reviewed by Anthem before it was denied.  Plaintiff did not mention in her Level 2 appeal letter that she had already undergone surgery earlier that month.

On September 27, 2004, the EBC reviewed Burnside's Level 2 appeal.  Because the EBC's claim reviews are conducted anonymously, the committee was unaware of Plaintiff's identity or employment status.  According to the EBC's meeting minutes, Burnside's appeal was denied because "the current medical guidelines [did] not permit" coverage for the Lap-Band procedure. As a result of the discussion of Plaintiff's appeal, however, the EBC directed Anthem to make an exception to its medical policy so that Lap-Band surgeries would be covered by Lilly's Health Plan, effective January 1, 2005.  The EBC notified Anthem of its decision on October 13, 2004, in a Production Support Request Form.  The request stated that the EBC's review of the medical literature regarding Lap-Band procedures showed that such procedures were an acceptable form of treatment for obesity and not necessarily investigational.  The request also noted that Burnside's appeal was denied, but that she would be directed to pre-certify for the procedure in 2005.  As a

result of the EBC's decision, Lap-Band procedures are currently covered under Lilly's Health Plan.

On October 22, 2004, the EBC notified Plaintiff of its decision to deny her Level 2 appeal. The denial letter included the specific Health Plan provisions precluding coverage for the Lap-Band procedure, indicating that the procedure was considered "investigational," which, under the terms of the Health Plan, could not be deemed medically necessary.  Moreover, the letter stated that the EBC's decision was final and concluded the appeals process for Burnside's claim.  The denial letter did not disclose that the EBC had decided to add coverage for the surgery beginning in January 2005 or that Plaintiff could reapply for coverage after the change became effective.

After the denial of her Level 2 appeal, Burnside filed this action on June 17, 2005, in the 136th Judicial District Court of Jefferson County, Texas.  Defendants removed the case to federal court on the basis of federal question jurisdiction on August 12, 2005.  In her Fifth Amended Complaint, Burnside seeks damages and attorneys' fees from Defendants Lilly and the Health Plan for the benefits allegedly due her under the Health Plan, as well as for breach of fiduciary duty, breach of the duty of good faith and fair dealing, equitable estoppel, and wrongful discharge related to the denial of her claim.  Burnside also alleges state law claims for defamation, slander, and tortious interference with prospective contracts against Defendants Lilly and Blasingame, which Plaintiff now admits are unrelated to her ERISA claims.  Burnside's state law claims arise out of her termination from Lilly on September 22, 2004, for allegedly falsifying her call reports, as well as from incidents that occurred after her discharge, in which Defendants Lilly and Blasingame allegedly defamed Burnside, thus preventing her from obtaining employment in the pharmaceutical industry.

Defendants filed the instant motion on September 5, 2006, seeking summary judgment on all of Plaintiff's claims.  With regard to Burnside's ERISA claims, Defendants argue that the EBC's decision to deny her benefits was appropriate under the Health Plan's terms and was not an abuse of discretion.  Moreover, Defendants contend that Burnside is not entitled to relief on her state law claims and her remaining federal claims for breach of fiduciary duty, breach of the duty of good faith and fair dealing, equitable estoppel, and wrongful discharge.  Plaintiff responds that the EBC abused its discretion by denying her claim while simultaneously determining that Lap-Band surgery would no longer be deemed investigational.  In particular, Plaintiff focuses on the EBC's failure to apply its decision retroactively to cover Lap-Band procedures, which would have allowed Burnside's surgery to be included under the Health Plan.  With regard to her state law claims for defamation, slander, and tortious interference with prospective contracts, Plaintiff requests that the court remand the claims to state court.

II.    Analysis

    A.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

6

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *see Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454; *Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961. The moving parties, however, need not negate the elements of the nonmovant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific

facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322 n.3 (citing FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000).   "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).   All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001).   The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).   The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted

8

evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Boudreaux*, 402 F.3d at 540; *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions," by speculation, by the mere existence of some alleged factual dispute, or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations omitted); *see Anderson*, 477 U.S. at 247-48; *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429

F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

      B.    ERISA Claims

          1.    Denial of Benefits

      Under ERISA, an administrator's interpretation or application of the plan, including a denial of plan benefits challenged under 29 U.S.C. § 1132(a)(1)(B), is reviewed utilizing the *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When an employee benefit plan gives its administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a reviewing court must evaluate the plan administrator's decision under an abuse of discretion standard. *See id.*; *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004), *cert. denied*, 545 U.S. 1128 (2005); *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002); *Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001).

      Here, section 15.01 of the Health Plan provides that the EBC administers, and has the discretionary authority to interpret, the Health Plan:

        The Employee Benefits Committee selected by the Company's board of directors
        is the Plan Administrator that administers the Plan and is a named fiduciary of the
        Plan withing the meaning of ERISA. Except for claims decisions reserved to the
        Managed Care Organizations under the Managed Care Options and POS Benefit,
        the Employee Benefits Committee has the final discretionary authority to determine

all issues arising under the Plan, including issues of Plan interpretation, and all factual issues relating to eligibility and coverage.

Because the Health Plan expressly gives the EBC discretionary authority to determine all questions of eligibility and coverage, the "abuse of discretion" standard of review applies. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115.

When an administrator acts under a conflict of interest, however, a court should be "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision." *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). A "'sliding scale' is applied to the abuse of discretion standard where it is determined that the administrator has acted under a conflict of interest." *Lain*, 279 F.3d at 343 (quoting *Vega*, 188 F.3d at 296). "'The greater the evidence of conflict on the part of the administrator, the less deferential [the court's] abuse of discretion standard will be.'" *Id.* (quoting *Vega*, 188 F.3d at 297); *see Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir. 2006). Where, as here, a plaintiff offers no evidence other than an administrator/insurer's dual role, "it is appropriate to review the administrator's decision with only a modicum less deference than [the court] otherwise would." *Vega*, 188 F.3d at 301.

Generally, the application of the abuse of discretion standard entails a two-step process. *See Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992). Initially, the process requires the court to "'determine the [legally] correct interpretation of the Plan's provisions.'" *Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1337 (5th Cir. 1994) (quoting *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Ret. Fund*, 877 F.2d 441, 444 (5th Cir. 1989)); *see Lain*, 279 F.3d at 344; *Aboul-Fetouh*, 245 F.3d at 472; *Whittaker v. BellSouth Telecomms., Inc.*, 206 F.3d 532, 535 (5th Cir. 2000); *Tolson v. Avondale Indus., Inc.*, 141 F.3d

11

604, 608 (5th Cir. 1998). If the administrator has not given the plan the legally correct interpretation, the court's second step must be to determine whether the plan administrator's interpretation constitutes an abuse of discretion. *See Aboul-Fetouh*, 245 F.3d at 472; *Whittaker*, 206 F.3d at 535; *Haubold*, 11 F.3d at 1337. "However, the reviewing court is not rigidly confined to this two-step analysis in every case." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994); *see also Alcorn v. Sterling Chems. Inc. Med. Benefits Plan for Hourly-Paid Employees*, 991 F. Supp. 609, 616 (S.D. Tex. 1998), *aff'd*, 168 F.3d 211 (5th Cir. 1999); *Rigby v. Bayer Corp.*, 933 F. Supp. 628, 632 (E.D. Tex. 1996). When "the case does not turn on sophisticated Plan interpretation issues, the Court is not required to apply the two-step process." *Alcorn*, 991 F. Supp. at 616 (emphasis omitted). Nevertheless, the reviewing court must consider whether an abuse of discretion has occurred. *See id*.

In determining the legally correct interpretation of a benefit plan, the court must consider: (1) whether the administrator's interpretation is consistent with a fair reading of the plan; (2) whether the administrator has given the plan a uniform construction; and (3) whether the interpretation results in any unanticipated costs to the plan. *See Ellis*, 394 F.3d at 270; *Lain*, 279 F.3d at 344; *Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union 4-447*, 47 F.3d 139, 145 (5th Cir. 1995); *see also Whittaker*, 206 F.3d at 535; *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 640 n.7 (5th Cir. 1999); *Haubold*, 11 F.3d at 1337. "If the administrator has applied a legally correct interpretation of the Plan, then no further inquiry is required." *Kolodzaike v. Occidental Chem. Corp.*, 88 F. Supp. 2d 745, 747 (S.D. Tex. 2000); *see Aboul-Fetouh*, 245 F.3d at 472; *Tolson*, 141 F.3d at 608; *Shelton v. Benefit Plan of Exxon Corp.*, 8 F. Supp. 2d 616, 620 (S.D. Tex. 1998), *aff'd*, 182 F.3d 915 (5th Cir. 1999), *cert*.

*denied*, 528 U.S. 1136 (2000) (citing *Chevron Chem. Co.*, 47 F.3d at 146; *Haubold*, 11 F.3d at 1341). In other words, "[i]nasmuch as the administrator made the legally correct interpretation, [the court is] not compelled to proceed to . . . determine whether the administrator's denial of benefits was an abuse of discretion because under a correct interpretation 'no abuse of discretion could have occurred.'" *Tolson*, 141 F.3d at 609 (quoting *Spacek v. Maritime Ass'n, I.L.A. Pension Plan*, 134 F.3d 283, 292 (5th Cir. 1998), *abrogated on other grounds by Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004)).

In the instant action, there is no indication that the EBC has given the plan a non-uniform construction, as there is no evidence that the EBC has treated similarly situated employees' claims differently during the same time frame or policy period. Furthermore, there is no suggestion that any unanticipated costs will result from the EBC's denial of benefits. Therefore, the court must determine whether the EBC's interpretation of the plan is fair and reasonable. *See Lain*, 279 F.3d at 344. The interpretation of an ERISA plan is governed by federal common law. *See Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir. 2004); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 (5th Cir. 1995). In construing ERISA plan provisions, the court interprets the "contract language 'in an ordinary and popular sense as would a person of average intelligence and experience,' such that the language is given its generally accepted meaning if there is one." *Transitional Learning Cmty. at Galveston, Inc. v United States Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000) (quoting *Todd*, 47 F.3d at 1452 n.1).

A review of the plan in this case demonstrates that it is straightforward in its language. Section 7, which is titled "Medical Benefit Exclusions," provides, in relevant part, as follows:

(a)      No payment will be made under the Plan's basic medical benefits provided under the PPO Option, Managed Care Options or POS Benefit (except

13

where such exclusion specifically applies only to a given option, as noted below), for the following items or services:

(1)     Items and services that are not Medically Necessary or to the extent that they exceed Usual and Customary amounts.

The Health Plan expressly states in its definition of "Medically Necessary" that "[c]harges shall not be considered to be Medically Necessary if they are:  (A) Investigational, Experimental, or of unproven value . . . ."  Thus, the plain language of Lilly's Health Plan is such that a person of average intelligence and experience would know that benefits were not available to an individual who was seeking coverage for an investigational procedure.  Hence, the EBC's interpretation of these provisions of the plan is fair and reasonable.

Moreover, the relevant Anthem medical policy, "SURG.00024," explains, under a heading titled "Investigational," that "[a]djustable gastric banding or the Lap-Band® System is considered investigational as a treatment of clinically severe obesity."  Burnside admitted in her deposition that she was provided a copy of this medical policy after her initial contact with Anthem and that she understood it to be a part of her health plan.  Under these circumstances, in light of the plain language of the plan, it is evident that Defendants gave the Health Plan its correct interpretation, and the EBC was not authorized to award Burnside benefits.  *See Haubold*, 11 F.3d at 1341. Accordingly, the EBC's decision to deny Plaintiff benefits cannot be viewed as an abuse of discretion.  *See id*.

Burnside appears to concede in her summary judgment response that the EBC did not abuse its discretion in determining that the Health Plan did not cover her surgery at the time she sought benefits.  Rather, Burnside focuses on the EBC's failure to apply its decision retroactively to cover her surgery.  According to Burnside, the abuse of discretion in this case rests in the EBC's denial

14

of coverage for Burnside and simultaneous decision that Lap-Band surgeries would no longer be deemed investigational.  Defendants respond that the EBC was under no obligation to make its decision retroactive and thus could not have abused its discretion by making the change prospective.

"'[E]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'  When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (citations omitted) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)); *accord Balestracci v. NSTAR Elec. & Gas Corp.*, 449 F.3d 224, 230 (1st Cir. 2006); *Martinez*, 338 F.3d at 430; *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F.3d 735, 742 (8th Cir.), *cert. denied*, 537 U.S. 885 (2002); *Walling v. Brady*, 125 F.3d 114, 117 (3d Cir. 1997).  Thus, "'an employer may decide to amend an employee benefit plan without being subject to fiduciary review'" because amending a plan is not an act of plan "management" or "administration." *Lockheed Corp.*, 517 U.S. at 890 (quoting *Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 505 (2d Cir. 1995)); *accord Varity Corp. v. Howe*, 516 U.S. 490, 505 (1996); *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 508-09 (6th Cir. 2004); *Martinez*, 338 F.3d at 430.

In the instant case, because the EBC's decision to include Lap-Band surgeries was merely a modification of the benefits available through the Health Plan, the EBC was under no duty to make its decision retroactive.  Moreover, the evidence presented by the parties does not indicate that an abuse of discretion occurred.  As explained by Elizabeth O'Farrell ("O'Farrell"), the Chief Financial Officer of Lilly and a member of the EBC:

> [O]ur typical desire would be to make [the change] prospective so that, no. 1, from
> an administrative standpoint, that would fit into the process of updating policies for
> the new plan year.   Second, understanding that we are administrating --
> administering this plan for the good of all participants, it's much fairer to have
> procedures that are specifically covered, communicated that they are covered, and
> then allow people to make those decisions based on prospective information.

Indeed, in her three years as a member of the EBC, O'Farrell could not recall a single instance
in which the EBC opted to make a retroactive policy change.  The evidence also shows that the
Level 2 appeal review was anonymous and that the EBC did not know Plaintiff's identity,
employment status, or that she had already undergone surgery at the time of the appeal.  Thus, it
does not appear that the EBC harbored an improper motive when it decided not to make a
retroactive change to the policy.  Accordingly, the court finds that the EBC did not abuse its
discretion in making a prospective change to the Health Plan while simultaneously denying
coverage to Burnside based on the clear terms of the plan at the time of her claim.  Therefore,
summary judgment on this claim is warranted.

### 2.   Breach of Fiduciary Duty

Defendants next contend that Plaintiff is not entitled to relief for breach of fiduciary duty.
Specifically, Burnside seeks damages pursuant to 29 U.S.C. § 1132(a)(2) and § 1132(a)(3) based
on the EBC's decision to deny her coverage for the Lap-Band surgery.  Plaintiff, however, is
unable to establish Defendants' liability for breach of fiduciary duty under either of the above
ERISA provisions.

### a.   Section 1132(a)(2)

Section 1132(a)(2) of ERISA provides that a civil action may be brought "by the Secretary,
or by a participant, beneficiary or fiduciary for appropriate relief under section 1109." 29 U.S.C.
§ 1132(a)(2).  Section 1109 then outlines the parameters of personal liability for breach of

fiduciary duty.  *See* 29 U.S.C. § 1109.  A plaintiff may seek relief under § 1132(a)(2), however, only when the recovery "inures to the benefit of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *accord Milofsky v. American Airlines, Inc.*, 404 F.3d 338, 343 (5th Cir. 2005); *Matassarin v. Lynch*, 174 F.3d 549, 565-66 (5th Cir. 1999), *cert. denied*, 528 U.S. 1116 (2000); *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237-38 (5th Cir. 1995), *cert. denied*, 516 U.S. 1174 (1996); *see Ream v. Frey*, 107 F.3d 147, 151-52 (3d Cir. 1997); *Tregoning v. American Cmty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993), *cert. denied*, 511 U.S. 1082 (1994); *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1417-18 (9th Cir. 1991).  As the Supreme Court explained in *Russell*, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."  473 U.S. at 142; *accord Milofsky*, 404 F.3d at 345; *Bryant v. International Fruit Prod. Co.*, 886 F.2d 132, 135 (6th Cir. 1989).  Thus, a plaintiff's failure to allege a loss to the plan will preclude her recovery under § 1132(a)(2).  *See McDonald*, 60 F.3d at 237-38; *Total Plan Servs., Inc. v. Texas Retailers Ass'n*, 932 F.2d 357, 358 (5th Cir. 1991) (per curiam) (citing *Russell*, 473 U.S. at 140); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 872 (S.D. Tex. 2004).

Here, Plaintiff is seeking recovery as an individual beneficiary of the Health Plan.  Indeed, Burnside's only argument that her case falls within the ambit of § 1132(a)(2) is that her application for benefits and subsequent appeals ultimately resulted in the coverage of Lap-Band procedures under the Health Plan—an outcome she contends inures to the benefit of the plan as a whole. While some current Health Plan participants may, in fact, benefit from the recent inclusion of Lap-

Band surgeries, such a result does not change the nature of Burnside's cause of action.  Each of

Burnside's ERISA claims is rooted in the EBC's denial of benefits for her particular surgery, and

the relief she is requesting would benefit her alone.  Moreover, she fails to allege any loss to the

Health Plan.  Plaintiff clearly seeks recovery on an individual basis, a type of claim that cannot

be pursued via § 1132(a)(2).  *See Russell*, 473 U.S. at 140-42; *Matassarin*, 174 F.3d at 565-66.

> b.    Section 1132(a)(3)

Although Plaintiff may not utilize § 1132(a)(2) as an avenue of recovery for breach of

fiduciary duty, the Supreme Court has held that such individualized relief may be sought pursuant

to § 1132(a)(3).  *See Varity Corp.*, 516 U.S. at 509-12; *see also Milofsky*, 404 F.3d at 346;

*Matassarin*, 174 F.3d at 566; *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th

Cir. 1998); *Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1006 (8th

Cir. 1996).  This relief is limited, however, to "appropriate equitable relief for injuries caused by

violations that [§ 1132] does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512; *accord

Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003); *Wilkins*, 150

F.3d at 615; *Tolson*, 141 F.3d at 610; *Wald*, 83 F.3d at 1006; *Moore v. Raytheon Corp.*, 314 F.

Supp. 2d 658, 664 (N.D. Tex. 2004).  Accordingly, "[i]t is settled law in this circuit that a

potential beneficiary may not sue for breach of fiduciary duty if he has a pending claim under

section 1132(a)(1)(B) for benefits allegedly owed." *Metropolitan Life Ins. Co. v. Palmer*, 238 F.

Supp. 2d 826, 830 (E.D. Tex. 2002) (citing *Tolson*, 141 F.3d at 610; *Constantine v. American

Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 557 (N.D. Tex. 2001)). Moreover, "the

availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it

guarantee, an adjudication in one's favor." *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d

18

1084, 1089 (11th Cir. 1999).  Thus, the fact that a plaintiff's claim for denial of benefits under § 1132(a)(1)(B) is ultimately unsuccessful will not render an alternative claim for breach of fiduciary duty under § 1132(a)(3) viable.  *See id.*; *Wilkins*, 150 F.3d at 615; *Tolson*, 141 F.3d at 610; *Palmer*, 238 F. Supp. 2d at 830.

In the instant case, there was an adequate remedy available under § 1132(a)(1)(B), which Burnside has pursued in her claim for denial of benefits.  Therefore, she may not simultaneously maintain a claim for breach of fiduciary duty under § 1132(a)(3).  *See Rhorer*, 181 F.3d at 639; *Tolson*, 141 F.3d at 610; *Palmer*, 238 F. Supp. 2d at 830.  Accordingly, summary judgment on Burnside's claim for breach of fiduciary duty is proper.

### 3.   Breach of the Duty of Good Faith and Fair Dealing

 It is unclear from Burnside's complaint whether she intended to pursue a separate cause of action for breach of the duty of good faith and fair dealing.  Indeed, the only reference to such an allegation appears in one sentence under Burnside's claim for denial of benefits.  Moreover, the statement refers to "long term disability benefits," which are clearly not at issue in this case. In any event, Burnside failed to respond to Defendants' argument for summary judgment on this claim.  Thus, the court finds that Burnside has abandoned any claim for breach of the duty of good faith and fair dealing that she may have alleged.  *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525-26 (5th Cir. 2005); *Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999); *Garcia v. BRK Brands, Inc.*, 266 F. Supp. 2d 566, 578 n.17 (S.D. Tex. 2003); *Edwards v. Texas-New Mexico Power Co.*, 259 F. Supp. 2d 544, 547 (N.D. Tex. 2003); *see also Stearman v. Comm'r of Internal Revenue*, 436 F.3d 533, 537 (5th Cir.), *cert. denied*, 126 S. Ct. 2900 (2006); *Bursztajn v. United States*, 367 F.3d 485, 491 (5th Cir. 2004); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir.

1993); *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). Therefore, dismissal of this claim is appropriate.

### 4.   Equitable Estoppel

Burnside also seeks relief on the basis of equitable estoppel. The United States Court of Appeals for the Fifth Circuit has expressly adopted estoppel as a cognizable theory of recovery under ERISA. *See Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir. 2005) (adopting ERISA-estoppel in accordance with the majority of other circuits); *see also High v. E-Systems Inc.*, 459 F.3d 573, 579 (5th Cir. 2006). "'To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances.'" *Id.* (quoting *Mello*, 431 F.3d at 444-45); *see McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 513 (5th Cir. 2000), *cert. denied*, 534 U.S. 822 (2001); *Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997). Additionally, "ERISA-estoppel is not permitted if 'based on purported oral modifications of plan terms.'" *Mello*, 431 F.3d at 446 (quoting *Weir*, 123 F.3d at 289); *see High*, 459 F.3d at 580; *Rodrigue v. Western & S. Life Ins. Co.*, 948 F.2d 969, 971 (5th Cir. 1991); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1297 (5th Cir. 1989); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989). A "'party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.' . . . [A]llowing 'estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.'" *High*, 459 F.3d at 580 (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir.), *cert. denied*, 524 U.S. 923 (1998)).

Here, Plaintiff claims that Defendants made oral and written misrepresentations to her regarding the Health Plan's coverage of Lap-Band procedures.  According to Burnside, an Anthem representative advised her over the telephone that the procedures would be covered at least in part, but that Burnside would need to demonstrate that the surgery was medically necessary before the Health Plan would cover it in full.  Anthem then sent a checklist[1] to Plaintiff's physician containing criteria for proving medical necessity, as well as a copy of the relevant Anthem medical policy.  These purported representations, however, are contrary to the unambiguous terms of the Health Plan.  Anthem mailed Burnside a copy of the pertinent surgical policy, which explicitly states that Lap-Band procedures were deemed investigational at the time, and Burnside concedes that the terms of the Health Plan were also available to her.  Under these circumstances, the court finds that any reliance by Burnside on the representations allegedly made by Anthem was unreasonable in light of the clear and unambiguous terms of the Health Plan documents provided to Plaintiff.  Moreover, the sole source of these alleged misrepresentations, Anthem, has already been dismissed from this action.

Finally, Burnside argues that the EBC's letter denying her Level 2 appeal materially misrepresents that the Lap-Band procedure was considered investigational, when, in fact, the EBC had already determined that such procedures would no longer be deemed investigational under the Health Plan.  Although the EBC had decided to include coverage for Lap-Band procedures prior to the mailing of Burnside's denial letter, this change was not to become effective until January 2005.  Thus, the EBC's statement in the denial letter that "adjustable gastric banding is currently

---

[1] The court notes that the checklist itself does not contain any material misrepresentations regarding the coverage available under Plaintiff's Health Plan.  Rather, it merely lists the additional information that Anthem sought in order to "research the predetermination" in Plaintiff's case.

investigational" was an accurate representation of the Health Plan's coverage at the time of Burnside's request for benefits and subsequent appeals.  Hence, in the absence of a genuine issue of material fact, Defendants are entitled to summary judgment on Burnside's equitable estoppel claim.

5.   <u>Wrongful Discharge</u>

Plaintiff's final claim under ERISA seeks damages for wrongful discharge pursuant to 29 U.S.C. § 1140.  In her response to Defendants' motion summary judgment, however, Burnside admits that the discovery in this case revealed that there was no link between the denial of her Lap-Band claim and her discharge from Lilly.  In light of this fact, Plaintiff expressly concedes in her response that summary judgment on this claim is appropriate.  Accordingly, the court concurs that summary judgment on Burnside's wrongful discharge claim under ERISA is proper.

6.   <u>Attorneys' Fees and Costs</u>

Defendants seek an award of attorneys' fees and costs with regard to Plaintiff's ERISA claims.  ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1); *see Russell*, 473 U.S. at 147; *Sunbeam-Oster Co., Inc. Group Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1378 (5th Cir. 1996).  The court must apply five enumerated factors to determine whether attorneys' fees are warranted under the particular facts of the case.  *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 821 (5th Cir. 1997); *Todd*, 47 F.3d at 1458; *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1525 n.35 (5th Cir. 1994).  These factors include:  (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of

attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *See Bannister v. Ullman*, 287 F.3d 394, 408-09 (5th Cir. 2002) (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)); *Wegner*, 129 F.3d at 821; *Todd*, 47 F.3d at 1458; *Pitts ex rel. Pitts v. American Sec. Life Ins. Co.*, 931 F.2d 351, 358 (5th Cir. 1991). "'No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying [the relevant costs and attorneys' fees provision of ERISA].'" *Wegner*, 129 F.3d at 821 (quoting *Bowen*, 624 F.2d at 1266); *see Izzarelli*, 24 F.3d at 1525 n.35. Ultimately, the award of attorneys' fees and costs is discretionary. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832-33 (5th Cir. 1996); *Todd*, 47 F.3d at 1458.

In the case at bar, there is no evidence that Burnside or her counsel acted in bad faith, and, although Burnside's ERISA claims against Defendants ultimately proved to be unsuccessful, it does not appear that her assertions were so frivolous as to justify the imposition of attorneys' fees and costs. Moreover, deterrence of similar claims is not a factor here, as the coverage language has changed to render such claims unnecessary. Furthermore, the record shows that Plaintiff has encountered difficulty finding steady employment since her termination from Lilly such that her ability to satisfy an award of fees and costs would be limited. Finally, Defendants did not raise significant legal questions regarding ERISA itself and did not seek to benefit all Health Plan participants. Accordingly, the court finds that an award of attorneys' fees and costs is not appropriate in this case.

C.     State Law Claims

In addition to her ERISA claims, Plaintiff raises state law claims for defamation, slander, and tortious interference with prospective contracts.  Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'"  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *accord Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540 (2002).  Supplemental jurisdiction over state law claims, however, is a "'doctrine of discretion, not of plaintiff's right.'"  *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *Gibbs*, 383 U.S. at 726); *accord Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004).  A district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c)(3); *accord Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 692 (5th Cir. 2006); *Priester*, 354 F.3d at 425; *Heaton v. Monogram Credit Card Bank of Ga.*, 231 F.3d 994, 997 (5th Cir. 2000), *cert. denied*, 533 U.S. 915 (2001); *Cabrol v. Town of Youngsville*, 106 F.3d 101, 110 (5th Cir. 1997) (citing *Cinel v. Connick*, 15 F.3d 1338, 1344 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994) (citing *Gibbs*, 383 U.S. at 725)).  Consequently, a federal court must consider the provisions of 28 U.S.C. § 1367(c) and "weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Cohill*, 484 U.S. at 350; *accord International Coll. of Surgeons*, 522 U.S. at 172-73; *Smith v. Amedisys*

24

*Inc.*, 298 F.3d 434, 446 (5th Cir. 2002); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999), *cert. denied*, 528 U.S. 1076 (2000); *Cabrol*, 106 F.3d at 110; *Cinel*, 15 F.3d at 1344.

When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims.   *See* 28 U.S.C. § 1367(c)(3); *International Coll. of Surgeons*, 522 U.S. at 173; *Cohill*, 484 U.S. at 349; *Gibbs*, 383 U.S. at 726-27; *Priester*, 354 F.3d at 425; *Heaton*, 231 F.3d at 997; *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990).  The Supreme Court has counseled that a court should decline jurisdiction "'if the federal claims are dismissed before trial.'"  *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998), *cert. denied*, 526 U.S. 1098 (1999) (quoting *Gibbs*, 383 U.S. at 726).  Moreover, in the Fifth Circuit, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."  *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *see Premiere Network Servs., Inc.*, 440 F.3d at 692; *Batiste*, 179 F.3d at 227.  The rule, however, is "'neither mandatory nor absolute.'"  *Amedisys Inc.*, 298 F.3d at 447 (quoting *Batiste*, 179 F.3d at 227).

Here, Burnside's federal claims against Lilly and the Plan are subject to summary judgment, leaving only her state law claims against Lilly and Blasingame for defamation, slander, and tortious interference with prospective contracts.  Moreover, it is undisputed that these state law claims are wholly unrelated to Plaintiff's federal claims under ERISA.  Thus, there is arguably no common nucleus of operative fact allowing the court to exercise supplemental jurisdiction over the state law claims.  *See Carnegie-Mellon Univ.*, 484 U.S. at 349 (quoting *Gibbs*, 383 U.S. at

725); *accord Raygor*, 534 U.S. at 540.   Furthermore, because the federal claims are being

dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest

that this court should decline to exercise jurisdiction over the remaining state law claims.   *See*

*Cohill*, 484 U.S. at 350; *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 328 (5th

Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999).   Accordingly, Plaintiff's remaining state law

claims will be remanded to state court.   *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.),

*cert. denied*, 512 U.S. 1207 (1994).

III.     Conclusion

Summary judgment is warranted on all of Burnside's federal claims against Defendants

Lilly and the Health Plan.   Plaintiff has no cognizable claim for an improper denial of benefits,

breach of fiduciary duty, breach of the duty of good faith and fair dealing, equitable estoppel, or

wrongful discharge under ERISA.   Thus, there remain no material facts in dispute, and Defendants

are entitled to judgment as a matter of law on Plaintiff's federal claims.   Burnside's remaining

state law claims against Lilly and Blasingame will be remanded to the 136th Judicial District Court

of Jefferson County, Texas.

SIGNED at Beaumont, Texas, this 1st day of December, 2006.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE